**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Case No. 04-cv-02465-LTB-PAC

TAYLOR BUCKLEY and
JOHN BUCKLEY,
        Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF COUNTY OF EL PASO, a government entity
of the State of Colorado; DAVID BERNS, individually and as an agent, employee and
representative of El Paso County; JACQUIE VIGNONE, individually and as an agent, employee
and representative of El Paso County; RON NEWMAN, individually and as an agent, employee,
and representative of El Paso County; JOE WALLIS, individually and as an agent, employee and
representative of El Paso County; AUBREY MOSES, individually and as an agent, employee and
representative of El Paso County;
        Defendants.

---

## ORDER

---

Plaintiffs bring claims against the Board of County Commissioners of the County of El

Paso ("El Paso County") and several officers of El Paso County under 42 U.S. § 1983 for

initiation of legal processes without probable cause, for malicious prosecution and for conspiracy;

and under state law for abuse of process, malicious prosecution and intentional infliction of

emotional distress.  Defendants move to dismiss for lack of subject matter jurisdiction under Fed.

R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons

discussed below defendants motion to dismiss is GRANTED in part and DENIED in part.

## I.  Background

The facts recounted below are based on plaintiffs' allegations. I assume these facts and allegations to be true for purposes of a motion to dismiss.

Plaintiff John Buckley is an attorney in El Paso County who frequently represents clients against the El Paso County Department of Human Services ("DHS.") Plaintiff Taylor Buckley is John Buckley's son. Defendant David Berns ("Berns") is the Director DHS. Defendants Joe Wallis ("Wallis") and Aubrey Moses ("Moses") are attorneys in the El Paso County Attorney's office. Defendants Ron Newman ("Newman") and Jacquie Vignone ("Vignone") are social workers with DHS.

The events in this case stem from a series of disputes between the Buckleys and the defendants that occurred between 1996 and 2002. The Buckley family had its first contact with the DHS in October 1996, when the DHS investigated a complaint by John Buckley's 8 year old daughter that she had been assaulted by her 14 year old brother.   The DHS caseworker concluded that there was no basis to investigate further.  In January 1997, DHS caseworkers investigated child abuse charges against John Buckley. DHS  filed charges, but on the day of the trial the County Attorney's office dismissed the case.

From March 1998 through December 1998, John Buckley's son, John Buckley  IV (not a party in this suit) was placed in youth correctional facilities stemming from misdemeanor charges not related to this case. After release from a facility called Nevada House in December 1998, he lived with John Buckley. In February 1999, DHS investigated claims of child abuse against John Buckley. DHS did not file charges, but sent a report to the Colorado Central Child Abuse Registry ("Registry".)  After additional investigation and correspondence with John Buckley, the

Registry notified him his name would not be placed on the Registry.

From September 1999 to January 2000, John Buckley, in his role as an attorney, represented Dave and Sherry Street in a case against the DHS. Buckley's representation of the Streets included, according to Buckley, "many heated exchanges and hearings" with Wallis and Moses, which included Buckley alleging that Wallis had misrepresented facts to the court. The Streets eventually prevailed in their case against DHS.

From August 2000 to December 2001, John Buckley represented another client against DHS, where Buckley tried to prevent his client from being listed on the Registry. The case against Buckley's client was dismissed in December 2001.

In January of 2001, DHS brought dependency and neglect actions against John Buckley, based on an alleged act of sexual abuse committed by Taylor Buckley against his sister, a minor child. At the time, Taylor Buckley was 14 and his sister was 13.  Taylor Buckley was placed in foster care as a result of this incident. John Buckley alleges that this placement was contrary to statute and that the reasons offered by the DHS caseworkers for this placement were "false or patently misleading." Buckley alleges that Newman and Vignone were responsible for investigating this matter and that Moses and Wallis assisted in this investigation.

Later, John Buckley learned that Wallis was going to preside over the administrative disposition of Taylor Buckley's case. When John Buckley tried to speak to Moses (Wallis' supervisor) about this,  Moses allegedly said to Buckley, "You are not going to do in this case what you did in the Street case. Do you hear me? You are not!" John Buckley states that Moses and Wallis told him that he could not speak to the caseworker assigned to Taylor Buckley's case and that he could only communicate with the County Attorney's office in writing. John Buckley

further alleges that Wallis made defamatory statements about him to Vignone and others in the courthouse hallway.

Sometime on or about February 2001, Moses and Wallis asked to have a special independent Deputy County Attorney appointed to Taylor Buckley's case to enable them to speak freely to investigators from the Defense Investigative Service about John Buckley's security clearance (Buckley is a member of the Air Force Reserve.) Moses and Wallis wished to avoid a potential conflict of interest and speak candidly to the DIS. John Buckley states that he believes that Moses and Wallis provided DIS with misleading or false information with the intent to undermine his security clearance.

The parties eventually mediated the dispute regarding Taylor Buckley. Taylor Buckley and his parents, including John Buckley, agreed to admit the truth of the sexual abuse allegations and Taylor Buckley agreed to undergo certain specified treatment. In return, DHS agreed not to place Taylor Buckley's name on the Registry. Taylor Buckley completed the treatment but the DHS, under the direction of Moses and Wallis, listed Taylor Buckley on the Registry anyway. Plaintiffs allege that defendants violated their agreement deliberately in order to "harass and injure" plaintiffs. Later, the court voided this agreement, allowed the parents to withdraw the admissions and proceeded to trial. At a trial held July 2, 2002, the court determined that DHS had failed to prove the charges by a preponderance of the evidence and that the contact between the children did not constitute sexual abuse. Because Taylor Buckley was reported to the Registry, a State Administrative Hearing was held on or about October 29, 2002 to consider his status. The court dismissed the action and Taylor Buckley's name was removed from the Registry.

Plaintiffs claim that the defendants initiated these actions without probable cause and in

4

retaliation for John Buckley's litigation against DHS in order to intimidate and harass him.

Plaintiffs allege that these actions violated their constitutional rights and state law. They charge

Vignone, Newman, Wallis and Moses with being personally engaged in these actions and charge

Berns with responsibility as a supervisor for failure of oversight and training of the other

defendants. Plaintiffs also make their federal law claims against El Paso County as a government

entity.

## II.   Standard of Review under Fed. R. Civ. P. 12(b) Motion to Dismiss

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim

upon which relief can be granted and under Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction.

Under Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint for failure to state

a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief. *See Coney v. Gibson*, 355

U.S. 41, 45-46 (1957).  If the plaintiff has pled facts that would support a legally cognizable claim

for relief, a motion to dismiss should be denied. *See id.*  In evaluating a 12(b)(6) motion to

dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed

in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and

Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

Fed. R. Civ. P. 12(b)(6) does not provide a procedure for resolving a contest about the

facts or the merits of the case. Thus, one must read Fed. R. Civ. P. 12(b)(6) in conjunction with

Fed. R. Civ. P 8(a), which sets forth the requirements for pleading a claim in federal court.

Federal R. Civ. P 8(a) requires "a short and plain statement of the claim showing that the pleader

is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Coney* at 47.  A plaintiff is not required to state precisely each element of the claim.  *See* 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154-59 (1990).  Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooey v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction. *Groundhog v. Keller,* 442 F.2d 674, 677 (10th Cir. 1971).  When a motion to dismiss under Rule 12(b)(1) attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States,* 46 F.3d 1000, 1002-1003 (10th Cir. 1995).

In the present case, defendants argue that plaintiffs' complaint should be dismissed both for lack of jurisdiction and for failure to state a claim. Defendants do not state specifically which arguments are pursuant to lack of jurisdiction and which are pursuant to failure to state a claim. However, for the purposes of this Order I will apply the same standard of review and accept all of the facts and allegations in the complaint as true.

### III.   Federal § 1983 Claims

Plaintiffs assert four claims under § 1983 against the individual defendants, both in their official and individual capacity. This distinction is important, because under § 1983 claims against units of government and claims against individuals require different levels of proof and  different factual allegations.  "To establish personal liability in a § 1983 action, it is enough to show that

the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 US 159, 166 (1985). However, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Id.* (Internal cites and quotes omitted.)  I therefore examine the claims against each defendant individually applying the appropriate standards.

A.     Claims Against County and Against Defendants in their Official Capacity

Plaintiffs make claims against all defendants in their official capacity and against El Paso County as a government entity. Claims against local officials in their official capacity are simply another way of "pleading an action against an entity of which an officer is an agent." *Kentucky, supra,* 473 U.S. at 165.  For this reason, I treat the claims against defendants in their official capacities as claims against El Paso County.

A local government is liable under § 1983 only  where a government "policy" or "custom" caused a deprivation of a constitutional right that injured the plaintiff. *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997).  A § 1983 claim only lies where a local government is the "moving force" behind an alleged injury due to its deliberate conduct. *Id.* at 404.  Plaintiffs' assert no facts in relation to defendants Vignone, Newman, Wallis and Moses that suggest an El Paso County policy or custom that is the moving force behind the alleged violations of plaintiffs' rights. Even construed generously, the facts in the complaint alleges only that these defendants acted in their individual capacity to injure the plaintiffs. Hence, I will consider these claims, below, only as claims for individual liability under § 1983.

The plaintiffs allege that Berns failed to supervise and to provide adequate training to the other defendants to ensure that they did not act in violation of plaintiffs' constitutional rights and

that this failure of training and oversight was the cause of plaintiffs' injuries.  A failure to train or

supervise can be a local government policy cognizable under § 1983, but only where the failure to

train "amounts to deliberate indifference to the rights" of the citizens. *City of Canton, Ohio v.*

*Harris,* 489 U.S. 378, 389 (1989).  Inadequate training can only represent a government policy if

the lack of training is a "deliberate choice to follow a course of action . . . made from among

various alternatives," and where that choice is made by an official "responsible for establishing

final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475

U.S. 469, 483 (1986).  The supervisory defendant must "expressly or otherwise (have)

authorized, supervised or participated in conduct which caused the constitutional deprivation."

*Snell v. Tunnell,* 920 F. 2d 673, 700 (10th Cir. 1990). However, direct participation is not

necessary. *Id.* "The requisite causal connection is satisfied if the defendant set in motion a series

of events that the defendant knew or reasonably should have known would cause others to

deprive plaintiff of her constitutional rights." *Id.* (Internal cites omitted.)

Plaintiffs here allege that Berns as DHS Director, was responsible for the oversight,

direction and training of DHS staff, of the procedures they use in determining if there is sufficient

basis to initiate dependency and neglect actions and for the supervision of the DHS staff as they

implement these policies. Plaintiffs further allege that Berns was aware of the personal animus

between defendants and plaintiffs and was aware that defendants initiated these actions without

valid legal basis in order to harass plaintiffs.

Defendants argue correctly that mere status as a supervisor is insufficient for § 1983

liability, *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Defendants contend that §

1983 liability requires "personal participation," *Id.,* and that supervisory liability under § 1983

only lies where there is an "affirmative link" between the alleged violation and the defendant's failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). This "affirmative link" must be alleged in the complaint as well as proved at trial. *Stidham v. Peace Officers Standards and Training,* 265 F.3d 1144, 1157 (10th Cir. 2001). Defendants conclude that since plaintiffs do not allege that Berns was personally involved in any of the alleged injuries to plaintiffs, their allegations cannot subject Berns to §1983 liability.

I find these arguments unpersuasive. Liability for lack of training and supervision does not require personal participation, but allows for a more indirect link to plaintiffs' injury. *Snell, supra,* 920 F.2d at 700. The cases defendants cite are inapposite.  In *Mitchell*, plaintiff failed to offer any evidence linking the named defendants to the alleged violation. 80 F.3d at1441. Here, plaintiffs specifically allege that Berns' inadequate training and supervision is the cause of the violations of plaintiffs' rights. (In addition, *Mitchell* was not based on liability due to inadequate training or supervision.)  Moreover, the Tenth Circuit considered *Mitchell* as an appeal from a judgment as a matter of law under Fed. R Civ. P. 50(a), after a jury trial, and *Butler*  was decided on a motion for summary judgment. The instant case is on a 12(b) motion to dismiss. Construing the complaint most favorably for plaintiffs, these allegations form a § 1983 claim that Berns' failure to supervise and/or train amounted to deliberate indifference to the rights of the Buckleys, and thus sufficient to establish a claim against El Paso County.

However, I also find and conclude that the claims against the other individual defendants under § 1983 are claims against them only in their individual capacity. The only claim against El Paso County is the claim for Berns' inadequate training and supervision. All other claims are against the defendants in their individual capacities.

9

B.      Claims Against Defendants as Individuals – Absolute and Qualified Immunity

Individual liability under § 1983 applies whenever an officer of a local government acts under color of state law to deprive an individual of a constitutional right. *Kentucky, supra,* 473 U.S. at 166.  Local government officials sued in their individual capacity under § 1983 may assert defenses of qualified or absolute immunity. A claim of immunity is an "immunity from suit" and not a "mere defense to liability." *Siegert v. Gilley,* 500 U.S. 226, 233 (1991). Immunity is generally a "purely legal question" for the trial court to resolve prior to fact finding or other burdens of litigation. *Id.* In order to avoid unnecessary litigation against government officers in the ordinary conduct of their duties, it is important to resolve issues of immunity "at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

1.      Absolute Immunity

Defendants claim that Moses and Wallis are entitled to absolute immunity as county attorneys. Absolute immunity is a common-law defense to prosecution applicable in §1983 cases. *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993). Officials seeking absolute immunity bear the burden of showing that such immunity is justified. *Id.* (internal cites omitted.) The Supreme Court has been "quite sparing" in recognizing absolute immunity, and generally applies absolute immunity based on the function, rather than the identity of a local official. *Id.*

Absolute immunity is available to prosecutors, but only for actions that are part of their judicial duties. *Scott v. Hern,* 216 F.3d 897, 908 (10th Cir. 2000). Prosecutorial immunity applies not only to criminal prosecutors, but also to "state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings." *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1489 (10th Cir.

1991.)  Prosecutorial immunity "does not extend to actions that are primarily investigative or administrative in nature, though it may attach even to such administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court."   *Snell, supra,* 920 F.2d at 693.  The key factor in determining whether a prosecutor's function is entitled to absolute immunity is whether that function is part of his advocacy role in the judicial process. *Id.*  In general, "the more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach. *Id.* at 687.

The distinction between the administrative and judicial function of prosecutors is often difficult to apply, but the Supreme Court has found that prosecutors are not entitled to absolute immunity when they give advice to the police or when they gather evidence prior to the initiation of an indictment. *Buckley, supra,* 509 U.S. at 274-275.  Similarly, a prosecutor's pre-indictment participation in a police investigation is not part of a prosecutorial function and does not receive absolute immunity. *Rex v. Teeples,* 753 F.2d 840, 844 (10th Cir. 1985). This kind of activity, which only has the potential to eventually form a prosecution, is investigative and  not "quasi-judicial." *Id.*

Here, Moses and Wallis are attorneys in the El Paso County Attorney's office. According to the complaint, Moses and Wallis supported the DHS social workers in bringing actions against the plaintiffs.  Plaintiffs allege that Moses and Wallis provided "administrative direction" to the other defendants in placing Taylor Buckley on the Registry and provided "investigative and administrative oversight" of the Petition for Dependency and Neglect. Plaintiffs also claim that the petition and the report to the Registry "ignored or covered up evidence," were  "without basis in

law," were pursued for the purpose of "retaliation and retribution," and were "contrary to statute." The reasons offered for the placement of Taylor Buckley in foster care are alleged to be "false or patently misleading." Plaintiffs also contend that Moses and Wallis made defamatory statements about plaintiffs, and made misleading or false statements to the DIS about plaintiffs.

From the allegations of the complaint it is difficult to discern whether the actions of Moses and Wallis were an advocacy function essential to their quasi-judicial role, and consequently protected by absolute immunity; or an investigation prior to and outside of a judicial action and thus not covered by absolute immunity. Construing the allegations most favorably to the plaintiffs, I conclude that defendants have not met their Rule 12 burdens. Plaintiffs allege not only that defendants initiated an action against them that is without foundation, but that Moses and Wallis initiated this action deliberately based on false information and outside of the normal administrative process.

Defendants assert that Wallis and Moses exercise "discretionary judgment on the basis of evidence developed in the course of formal child abuse proceedings." However, plaintiffs challenge this statement and argue that Wallis and Moses acted outside of their appropriate roles to bring these actions.  The facts alleged here appear similar to those in *Buckley*, where the Supreme Court found that prosecutors actively assisting police in developing an initial case by manufacturing false evidence and witness shopping could not claim absolute immunity. *Buckley, supra,* 509 U.S. at 271-275.

I cannot say that plaintiffs can prove no set of facts that would show Moses and Wallis acted outside of their appropriate roles, or that their actions were investigative rather than quasi-judicial. I therefore find and conclude that Moses and Wallis have not showed that they are

entitled to absolute immunity.

    2.       Qualified Immunity

Qualified immunity is available to any local officer not covered by absolute immunity. *See Buckley, supra,* 509 U.S. at 271.  A defendant is protected by qualified immunity in a § 1983 action if he shows he acted reasonably. *Elder v. Holloway,* 510 U.S. 510, 512 (1994). Reasonableness is demonstrated through a two step analysis. "[F]irst we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right. (Internal cites omitted.) Order is important; we must decide first whether the plaintiff has alleged a constitutional violation, and only then do we proceed to determine whether the law was clearly established." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1239 (10th Cir. 2003).   If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001). For determinations of qualified immunity, a trial court may review all relevant precedents and not simply those presented by the parties. *See Elder, supra,* 510 U.S. at 516.

Defendants argue first that they are entitled to qualified immunity because plaintiffs have not met their burden to plead a § 1983 claim with sufficient specificity. Defendants contend that to defeat qualified immunity a § 1983 claim "[m]ust articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir. 1995). However, plaintiffs' burden to defeat qualified immunity does not trigger a heightened pleading requirement; the liberal rules of notice pleading

under Rule 8(e) still apply. *Currier v. Doran,* 242 F.3d 905, 911-918 (10th Cir. 2001) (*See also*

*Stidham v. Peace Officers Standards and Training,* 265 F.3d 1144, 1157 (10th Cir. 2001.)

Consequently, even for determining qualified immunity, in a motion to dismiss I will

consider plaintiffs' pleadings sufficient if they allege any set of facts that might show a

constitutional violation. I then turn to the purely legal question of whether this violation was

"clearly established" at the time.

a.    Violation of a Federal right

Plaintiff alleges four causes of action under § 1983, asserting that initiation of dependency

and neglect proceedings without probable cause, malicious prosecution, conspiracy, and failure to

train and supervise all violate plaintiffs' Fourth and Fourteenth Amendment rights.  Plaintiff's first

two causes of action are virtually indistinguishable.  Plaintiffs allege that  defendants initiated

proceedings against them without probable cause, and also that these officials engaged in abuse of

process by initiating proceedings without probable cause. It is unclear whether the second cause

of action alleged is abuse of process or malicious prosecution, which are separate tort actions in

Colorado (where absence of probable cause is an element of malicious prosecution but not of

abuse of process) but which plaintiffs characterize as being the same cause of action.

For both of these claims, plaintiffs do not make clear which of their specific constitutional

rights was violated. Nor do plaintiffs state whether under the Fourteenth Amendment they are

claiming procedural due process, substantive due process or simply asserting their Fourteenth

Amendment rights as the vehicle by which their Fourth Amendment rights apply to these officials

of local government. Following the liberal requirements of notice pleading, I will consider

plaintiffs' claims under any valid theory of the Fourth or Fourteenth Amendment.

Plaintiffs' first two causes of action assume that lack of probable cause to initiate the proceedings in this case is a violation of the Fourth or Fourteenth Amendments.  Plaintiffs cite *Franz v. Lytle*, 997 F.2d 784 (10th Cir. 1993) to argue that social workers require probable cause before initiating actions for dependency and neglect. In fact,  *Franz* holds that police officers require probable cause before engaging in a highly invasive search of a child that included inspecting and photographing her pubic areas. *Id.* at 790. *Franz* rejected the idea that police officers, when investigating the potential criminal activity of parents, should be able to claim the same kind of qualified immunity social workers sometimes receive in actions to protect a child. *Id.* at 790-791. *Franz,* in dicta,  distinguishes  cases where social workers have claimed qualified immunity when engaging in less invasive searches because their skill, experience and adherence to their professional manual satisfies probable cause. *Id.*

*Franz* supports the proposition that the protections of the Fourth Amendment apply to social workers engaging in searches and seizures. Indeed, the Tenth Circuit has broadly acknowledged this principle. *See Jones v. Hunt,* 410 F.3d 1221 (10th Cir. 2005), (seizure of a child at a public school by a social worker must comport with requirements of Fourth Amendment); *Malik v. Arapahoe County Dep't of Soc. Servs.,* 191 F.3d 1306, 1316 (10th Cir. 1999) (a social worker violates the Fourth Amendment by procuring seizure order through material omissions.); *Snell v. Tunnell, supra,* 920 F.2d 673 (10th Cir. 1990)(social workers violated the Fourth Amendment when they repeatedly tried to seize and gain custody of children based on false information). However, this still begs the question as to whether this general Fourth Amendment protection applies to defendants' alleged conduct in this case.

Plaintiffs allege that they were victims of an invalid administrative process, that defendants

15

improperly placed Taylor Buckley in foster care and improperly listed him on the Registry.  It is unclear from the complaint whether Taylor Buckley was removed from his custodial home when he was placed in foster care, but this is a reasonable inference.  Such a removal can constitute a seizure under the Fourth Amendment. *Id.*  Further, a Fourth Amendment seizure can constitute a malicious prosecution actionable under § 1983 if it also satisfies the common law elements of malicious prosecution. *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir. 1996).  In Colorado, the elements of malicious prosecution are: "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." *Thompson v. Maryland Cas. Co.,* 84 P.3d 496, 503 (Colo. 2004). Plaintiffs have made allegations that satisfy all of these elements. I therefore conclude that plaintiffs have made a cognizable constitutional claim for malicious prosecution under the Fourth Amendment.

However, plaintiffs have not made out any due process claims under the Fourteenth Amendment. Claims for malicious prosecution are not cognizable under the Fourteenth Amendment. *Albright v. Oliver,* 510 U.S. 266, 274-275 (1994). In the Tenth Circuit, placing a child on the Registry, by itself, does not violate a Fourteenth Amendment liberty interest. *Doe v. Bagan,* 41 F.3d 571, 575-576 (10th Cir. 1994).

Accordingly, plaintiffs have argued cognizable Fourth Amendment violations, but not cognizable Fourteenth Amendment liberty interest violations. Under the lenient pleading requirements of Rule 8(a), I find and conclude that plaintiffs have met their burden on the first two claims as Fourth Amendment violations. (For the purposes of this motion to dismiss, I do not address whether these two claims are in fact separate claims.)

16

Defendants do not specifically challenge plaintiffs' third claim, civil conspiracy.  I construe defendants' challenge to this claim as derivative of their challenge to the first two claims. Since I uphold the first two claims and defendants make no specific challenge to this claim, I necessarily uphold this claim as well.

Plaintiff's fourth claim for relief is lack of training and supervision of caseworkers. As discussed above, plaintiffs have alleged enough to show that El Paso County is liable for Berns' failure to train and supervise.  However, failure to train is a theory to attach liability to a local government. *City of Canton, supra,* 489 U.S. at 389.  It is not a basis for individual liability. Since plaintiffs have advanced no allegations against Berns as an individual that violate federal rights, no qualified immunity analysis is necessary and the 4th claim for relief is in fact only a claim against El Paso County.

b.       Were these rights "clearly established" at the time?

Qualified immunity serves to ensure that officers are not subject to suit unless they have "fair warning."that their conduct is unlawful. *Hope v Pelzer,* 536 U.S. 730, 739 (2002). An officer may only be subject to suit for violations of a constitutional right that are "clearly established." *Id.* A right is clearly established when its "contours (are) sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in light of  pre-existing law, the unlawfulness must be apparent." *Id.*   This does not mean fair notice requires that there is a precedent based on facts "fundamentally similar" to the one at issue. *Id.*  "Officials may still be on notice that their conduct violates established law even in novel factual circumstances." *Id.*  Thus, the qualified immunity analysis is not "a scavenger hunt for prior cases with precisely the same facts," but "the more relevant inquiry of whether the law put officials on fair notice that the

described conduct was unconstitutional." *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004.) Determining whether a constitutional right is clearly established at the time of the events in dispute is a purely legal question. *Siegert, supra,* 500 U.S. at 233.

As discussed above, the only valid constitutional violation claimed by plaintiffs is the seizure of Taylor Buckley in violation of the 4th Amendment. In this case, the Tenth Circuit case law establishing that social workers and county attorneys are subject to Fourth Amendment protections against unreasonable search and seizure was firmly established in *Snell v. Tunnell,* 902 F.2d 673 (10th Cir. 1990). I thus conclude that the law regarding 4th Amendment seizures was clearly established when these events occurred beginning in 1996. Defendants had fair warning that an illegal seizure by social workers violates the Fourth Amendment. Accordingly, defendants cannot dismiss these § 1983 claims at this stage of the proceedings under the doctrine of qualified immunity.

C.    Statute of Limitations

Defendants argue in addition that all or most of plaintiffs' claims are time-barred because they occurred no later than July 2, 2002 and plaintiffs did not file their claims until July 1, 2004. Defendants contend that the applicable statute of limitations for § 1983 claims is two years, citing *Blake v. Dickason,* 997 F.2d 749 (10th Cir. 1993) and *Workman v. Jordan,* 32 F. 3d 475, 482 (10th Cir. 1994).

Plaintiffs argue that the statute of limitations did not begin to run until after the final administrative action by the Colorado Division of Hearings dismissed the action against plaintiffs and dropped Taylor Buckley from the Registry in October 2002. The Supreme Court held in *Heck v. Humphrey,* 512 US 477, 486-487 (1994), that a § 1983 action does not ripen until the

final criminal proceeding is completed. *Heck* applied this doctrine in criminal cases, stating that a § 1983 claim only becomes cognizable once "once the sentence or conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id. Accord, Martinez v. City of Albuquerque,* 184 F.3d 1123, 1125 (10th Cir. 1999). Plaintiffs argue further that in the Tenth Circuit, the *Heck* doctrine has been extended to apply also to administrative processes. *Griffin v. Samu,* 65 Fed. Appx. 659, 660-661 (10th Cir. 2003). Defendants do not offer any specific argument to rebut plaintiff's contention that the *Heck* doctrine renders plaintiffs' claims timely.

 *Heck* holds that a §1983 claim cannot lie until the underlying claim has been invalidated. Logically, there is no claim for a violation of rights until or unless the legal system has proven that the state acted in error. Moreover, in the Tenth Circuit, "Heck should apply to such situations when the concerns underlying *Heck* exist." *Beck v. City of Muskogee Police Dep't.*, 195 F.3d 553, 557 (10th Cir. 1999). Here, plaintiffs could not make a cognizable § 1983 claim for malicious prosecution or abuse of process if the DHS claims had been upheld. They had to wait until the courts or the administrative process had ruled in their favor. I therefore find and conclude that plaintiffs' claims are not time-barred.

### IV. State Law Claims

 Plaintiffs plead three state law claims – malicious prosecution, abuse of process and intentional infliction of emotional distress. (Plaintiffs have dropped their fourth state law claim, a claim of respondeat superior against El Paso County.)

Defendants argue that state law sovereign immunity bars these state law claims against the individual defendants and El Paso County. Specifically, defendants claim that public entities are immune from liability from tort claims, C.R.S. § 24-10-106, that a county department of public services is a public entity under Colorado law, C.R.S. § 24-10-103(5), that public entities have the same immunities as public employees, C.R.S. § 24-10-106(3), and that state law bars punitive or exemplary damages against all defendants, C.R.S. §§ 24-10-114(4) and 24-10-118(1)(c).

Defendants' argument fails because state law immunity does not extend to public employees for their willful and wanton conduct. C.R.S. §24-10-118(2). Plaintiffs' state law claims for malicious prosecution and abuse of process specifically claim that defendants engaged in willful and wanton conduct. Plaintiffs' claim for intentional infliction of emotional distress does not use the precise words "willful and wanton conduct," but uses the similar phrases "deliberate indifference" and "reckless." While this section of the Colorado Code does not specifically define "willful and wanton," Colorado courts have adopted definitions of "willful and wanton" to include actions conducted "heedlessly and recklessly," *Moody v. Ungerer,* 885 P.2d 200, 205 (Colo. 1994), and with "conscious disregard for the safety of others." *Peterson v. Arapahoe County Sheriff*, 72 P.3d 440, 444 (Colo. Ct. App. 2003). Plaintiff here alleges that defendants deliberately initiated actions against them without cause in retaliation for their prior acts of representation against El Paso County. I find and conclude that plaintiffs have plead conduct that satisfies the state law definition of "willful and wanton" conduct. Thus, immunities under state law do not bar these claims.

Therefore, it is so ORDERED as to the federal law claims:

1.      Defendant's motion to dismiss for failure to state a claim is DENIED as to the

claims against defendants Moses, Vignone, Newman and Wallis in their individual capacity;

2.      Defendants's motion to dismiss for failure to state a claim is DENIED as to Berns in his official capacity;

3.      Defendants' motion to dismiss for failure to state a claim is DENIED as to El Paso County;

4.      Defendant's motion to dismiss for failure to state a claim is GRANTED as to Berns in his individual capacity;

5.      Defendants' motion to dismiss for failure to state a claim is GRANTED as to defendants Moses, Vignone, Newman and Wallis in their official capacity.

6.      Defendants' motion to dismiss for failure to state a claim is DENIED as to plaintiffs' claims of violations of Fourth Amendment rights and GRANTED as to plaintiffs' claims for Fourteenth Amendment due process rights.

It is further Ordered as to the state law claims:

    7.      Defendant's motion to dismiss for lack of jurisdiction as time-barred is DENIED.


**DONE and ORDERED,** this __19[th]__ day of September, 2005 at Denver, Colorado.


                                            ____s/Lewis T. Babcock_____
                                            United States District Chief Judge